# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL NO. 3:11CV498-MOC-DSC

| | |
|---|---|
| BETTY JAMES and WILLIE JAMES )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>VANDERBILT MORTGAGE AND FINANCE, INC., and DEIDRE D. DEFLORENTIS, Substitute Trustee, )<br>)<br>Defendant )<br>) | **MEMORANDUM AND RECOMMENDATION AND ORDER** |

**THIS MATTER** is before the Court on Defendant Vanderbilt Mortgage and Finance, Inc.'s "Motion to Dismiss" (document #7), as well as the parties' briefs and exhibits. See documents ##8, and 10-12.

This matter was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1), and this Motion is now ripe for the Court's consideration.

Having fully considered the arguments, the record, and the applicable authority, the undersigned respectfully recommends that Defendant's Motion be granted, as discussed below.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs, who are husband and wife, seek damages and declaratory relief on state law claims arising from their inability to repay a home mortgage loan made to them by Defendant Vanderbilt Mortgage and Finance, Inc.

On December 30, 2008, Plaintiffs closed on a loan to finance their purchase of a manufactured home for $56,061.00. Plaintiffs owned a parcel of unencumbered land in Union County, North Carolina on which they intended to place the home.

During the closing, Plaintiffs completed and signed a loan application, verifying that the information contained therein was "true, accurate and complete." Plaintiffs allege that the application overstated their financial status by containing inflated values for some of their assets or listing assets that they did not own. However, there is no allegation nor any indication in the record that Defendant contributed to or was aware of these inaccuracies. Plaintiffs also executed a Promissory Note which was secured by a Deed of Trust. The Note required monthly payments of $1,107.66, based on an annual percentage rate of 11.74 percent.

At the time the parties consummated the loan, Willie James (age 69) and Betty James (age 64) were receiving $835 and $853 respectively in Social Security benefits. Betty James also earned an average of $172.50 per week from a part-time job. The monthly principal and interest payment on the loan consumed forty-eight percent of Plaintiffs' total income.

Plaintiffs allege that they made the monthly payments for six months, through October 2009. At about that time, Willie James began to experience health problems and incurred medical bills. Additionally, Betty James' part-time job was reduced from twenty-seven and a half hours per week to only six to seven hours per week. As a result, Plaintiffs "began having trouble making payments," and "they began trying to work with Vanderbilt to save their home." "Complaint" ¶ 35 (document #1). Plaintiffs contend that Defendant refused to cooperate with them in addressing their inability to make the monthly payments.

On February 1, 2011, Defendant DeFlorentis, the Substitute Trustee on the Deed of Trust, instituted a foreclosure proceeding in Union County Superior Court. After several continuances,

2

a foreclosure hearing was held on July 28, 2011, at which time the Clerk of Court entered an Order of Foreclosure. The foreclosure sale was set for October 25, 2011.

On September 20, 2011, Plaintiffs filed their Complaint in Union County Superior Court. Plaintiffs assert claims against Defendant Vanderbilt for declaratory relief, breach of the implied duty of good faith and fair dealing, violation of the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1 ("UDTPA"), and violation of North Carolina's Rate Spread Home Loan Statute, N.C. Gen. Stat. § 24-1.1F, et. seq. ("Rate Spread Statute").

On October 6, 2011, Defendant Vanderbilt removed the state proceeding to the United States District Court for the Western District of North Carolina, asserting the existence of diversity subject matter jurisdiction. Said removal has not been challenged and appears proper.[1]

After the Complaint was filed, Defendant voluntarily postponed the foreclosure sale.

On November 17, 2011, Defendant filed its Motion to Dismiss which has been fully briefed and is ripe for determination.

---

[1] The citizenship of Defendant DeFlorentis, the substitute trustee, is not relevant to the Court's analysis for removal because she is a nominal defendant in this action who is not considered for purposes of diversity jurisdiction. "'[T]he general rule is that the citizenship of the real parties in interest is determinative for purposes of diversity jurisdiction.' Diversity of citizenship is not determined by reference to the nominal or formal parties; 'rather, there must be complete diversity between the real and substantial parties in interest.'" Sutton Woodworking Machine Co., Inc. v. Nova Tech., Inc., 328 F. Supp. 2d 601, 604 (M.D.N.C. 2004) (quoting Roche v. Lincoln Prop. Co., 373 F.3d 610, 615 (4th Cir. 2004)). See also Navarro Sav. Ass'n v. Lee, 446 U.S. 458, 461 (1980) ("Thus, a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy.") "A nominal party has no personal stake in the outcome of the litigation and is not necessary to an ultimate resolution." Dempsey v. Transouth Mortgage Corp., 88 F. Supp. 2d 482, 484 (W.D.N.C. 1999). As the Dempsey court held, the substitute trustee in an action is merely a nominal party and does not defeat diversity jurisdiction. Dempsey, 88 F. Supp. 2d at 484. The substitute trustee holds title to the land described in the deed of trust "for the sole benefit of the real parties in interest." Id. The substitute trustee does "not have nor does it now have any interest in this suit." Id. Further, "the complaint contains no factual allegations against [the substitute trustee]." Id.

## II. DISCUSSION

### A. Standard of Review

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1960 (2009), quoting Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949.

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this standard. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. 129 S. Ct. at 1951. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1951 (allegation that government officials adopted challenged policy "because of" its adverse effects on protected group was conclusory and not assumed to be true), citing Twombly, 550 U.S. at 554-55. Although the pleading requirements stated in "Rule 8 [of the Federal Rules of Civil Procedure] mark[] a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing

more than conclusions." Id. at 1950.

Second, to the extent there are well-pleaded factual allegations, the court should assume their truth and then determine whether they plausibly give rise to an entitlement to relief. Id. at 1951. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief "will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950.  "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief,'" and therefore should be dismissed. Id., quoting Fed. R. Civ. P. 8(a)(2). In other words, if after taking the complaint's well-pleaded factual allegations as true, a lawful alternative explanation appears a "more likely" cause of the complained of behavior, the claim for relief is not plausible. Id. at 1951-52.

### B. Rate Spread Statute Claim

North Carolina's Rate Spread Statute provides as follows:

(c) No lender shall make a rate spread home loan unless the lender reasonably and in good faith believes at the time the loan is consummated that one or more of the obligors, when considered individually or collectively, has the ability to repay the loan according to its terms and to pay applicable real estate taxes and hazard insurance premiums. . . .
    (1) A lender's analysis of an obligor's ability to repay a rate spread home loan according to the loan terms and to pay related real estate taxes and insurance premiums shall be based on a consideration of the obligor's credit history, current and expected income, current obligations, employment status, and other financial resources other than the obligor's equity in the real property that secures repayment of the rate spread home loan.
    (2) In determining an obligor's ability to repay a rate spread home loan, the lender shall take reasonable steps to verify the accuracy and completeness of information provided by or on behalf of the obligor using tax returns, payroll receipts, bank records, reasonable alternative methods, or reasonable third-party verification....
    (4) A lender's analysis of an obligor's ability to repay a rate spread loan may utilize reasonable commercially recognized underwriting standards and

5

>methodologies, including automated underwriting systems, provided the standards and methodologies comply with the provisions of this section.

N.C. Gen. Stat. § 24-1.1F (2008).

The Complaint contains only conclusory allegations and fails to set forth specific facts which, if proven, would amount to a violation of N.C. Gen. Stat. § 24-1.1F. Plaintiffs have not alleged any facts showing that Defendant lacked a reasonable and good faith belief that they could repay the loan at the time it was consummated. Plaintiffs do not allege any particular type or source of information that Defendant failed to consider in making the loan. Rather, they allege that Defendant considered their sources of income at the time the loan was made. Taking the facts alleged in the Complaint as true, Plaintiffs' ability to repay the loan did not deteriorate until six months after the loan was made. The statute expressly applies to the lender's knowledge "at the time the loan is consummated." N.C. Gen. Stat. § 24-1.1F(c).

Plaintiffs allege that at the time the loan was made, they were <u>able</u> to make the monthly mortgage payments. Plaintiffs also allege that they subsequently became unable to repay the loan because "Mr. James' health began failing," which resulted in increased medical bills, and Mrs. James' work hours were reduced. Complaint at ¶¶ 33–34. Accepting the facts in the Complaint as true, both of these events occurred (1) after the parties closed on the subject loan transaction and (2) were the proximate cause of their inability to make their monthly payments. Defendant could not be expected to consider these unforeseen circumstances in determining Plaintiffs' ability to repay the loan at the time it was consummated.

Plaintiffs further allege that their loan application contained incorrect "Asset Information." They have failed to allege any facts showing that Defendant was aware of or responsible for these inaccuracies.

6

For these reasons, the undersigned respectfully recommends that Defendant's Motion to Dismiss be <u>granted</u> as to Plaintiffs' Rate Spread Statute claim.

**C. <u>Good Faith and Fair Dealing Claim</u>**

Plaintiffs cite no legal  legal authority for their claim that Defendant violated its implied duty of good faith and fair dealing in performance of the loan contract by making a  usurious loan under the Rate Spread Statute and by refusing to modify the terms of the loan once it became apparent that Plaintiffs could not make the monthly payments.

It is a basic principal of contract law that parties to an enforceable contract must "act in good faith and ... make reasonable efforts to perform [their]  obligations under the agreement." <u>Maglinoe v. Aegis Family Health Ctrs.</u>, 168 N.C. App. 49, 56, 607 S.E.2d 286, 291 (2005).

Concerning Plaintiffs' argument that the loan violates the Rate Spread Statute, their allegations are insufficient for the reasons discussed above in Section II. B.

Plaintiffs' second argument,  that Defendant had a legally recognized duty to  modify the terms of the loan,  amounts to a request that the Court re-write the terms of the loan.   <u>See</u> <u>Wells Fargo Realty Advisors Funding, Inc. v. Uioli, Inc.</u>, 872 P.2d 1359, 1363 (Colo. Ct. App. 1994) (holding that the duty to act in good faith "does not obligate a party to accept a material change in the terms of the contract or to assume obligations that vary or contradict the contract's express provisions," nor does the duty of good faith "inject substantive terms into the parties' contract"); <u>see also</u> <u>General Aviation, Inc. v. Cessna Aircraft Co.</u>, 915 F.2d 1038, 1041–42 (6th Cir. 1990); <u>Serfecz v. Jewel Food Stores</u>, 1994 U.S. Dist. LEXIS 12239 (N.D. Ill. Aug. 30, 1994) ("Where the disputed issue in a contract is governed by express terms, however, there is no gap to be filled, and the parties' behavior is assessed according to the express provisions, without resort to an implied

covenant of good faith and fair dealing"); Barnes v. St. Joseph's Hosp., 601 N.W.2d 587, 591 (N.D. 1999); Amoco Oil Co. v. Ervin, 908 P.2d 493, 498 (Colo. 1995); Idaho First National Bank v. Bliss Valley Foods, Inc., 121 Idaho 266, 824 P.2d 841, 863 (Idaho 1991); East Penn Sanitation, Inc. v. Grinnell Haulers, Inc., 294 N.J. Super. 158, 682 A.2d 1207, 1213 (N.J. Super. Ct. App. Div. 1996); Badgett v. Security State Bank, 116 Wash. 2d 563, 807 P.2d 356, 360 (Wash. 1991); 17A Am. Jur. 2d Contracts § 370. Applying these legal principles, the undersigned concludes that Defendant had no duty to forgo its rights under the terms of the loan to foreclose on the property.

For these reasons, Plaintiffs have failed to state a claim for breach of the implied duty of good faith and fair dealing. The undersigned respectfully recommends that this claim also be dismissed.

### D. **Claims for Unfair and Deceptive Trade Practices and Declaratory Relief**

Having failed to establish any underlying claims against Defendant, Plaintiffs' claims for unfair and deceptive trade practices and for declaratory relief must also fail. Accordingly for the same reasons discussed in Sections II. B and C. above, the undersigned respectfully recommends that Plaintiffs' claims for unfair and deceptive trade practices and for declaratory relief be dismissed .

### III. ORDER

**IT IS ORDERED** that all further proceedings in this action, including all discovery, are **STAYED** pending the District Judge's ruling on this Memorandum and Recommendation and Order.

## IV. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Defendant Vanderbilt Mortgage and Finance, Inc.'s "Motion to Dismiss" (document #7) be **GRANTED** and that the Complaint be **DISMISSED WITH PREJUDICE**.

## V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation and Order to counsel for the parties; and to the Honorable Max O. Cogburn, Jr.

**SO ORDERED AND RECOMMENDED.**

Signed: January 23, 2012

David S. Cayer
United States Magistrate Judge